**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
_____
                              :
MILTON RIDER,                 :
                              :      Civil Action No. 03-1249 (JAG)
          Petitioner,         :
                              :
      v.                      :
                              :              OPINION
ALFARO ORTIZ, et al.,         :
                              :
          Respondents.        :
_____:
```

**APPEARANCES:**

      MILTON RIDER, Petitioner <u>Pro</u> <u>Se</u>
      #209867 SBI# 308637B
      Riverfront State Prison
      P.O. Box 9104
      Camden, New Jersey 08101

      CATHERINE ANTOINE FODDAI, ESQ.
      BERGEN COUNTY PROSECUTOR'S OFFICE
      Bergen County Justice Center
      Hackensack, New Jersey 07601
      Attorneys for Respondents

**GREENAWAY, JR., District Judge**

     This matter is before the Court on petitioner Milton Rider's application for habeas corpus relief under 28 U.S.C. § 2254. For the reasons stated below, the petition for habeas relief will be denied for failure to make a substantial showing of a federal statutory or constitutional deprivation.

I.   <u>BACKGROUND</u>

A.   <u>Procedural History</u>

Petitioner, Milton Rider ("Rider"), is presently confined at the Riverfront State Prison in Camden, New Jersey, serving a prison term of 50 years with a 25-year parole disqualifier.

On February 13, 1986, Rider and another defendant, James Williams, were indicted by a Bergen County grand jury for (1) robbery, in violation of N.J. Stat. Ann. 2C:15-1(a)(2); (2) possession of a weapon for unlawful purposes, in violation of N.J. Stat. Ann. 2C:39-4; (3) possession of a prohibited weapon or device, specifically, a sawed-off shotgun, in violation of N.J. Stat. Ann. 2C:39-3(a); and (4) possession of a handgun without a permit, in violation of N.J. Stat. Ann. 2C:39-5.

A twelve-day jury trial commenced on December 2, 1986 and lasted through December 19, 1986.  The jury found Rider guilty on all charges.  On July 31, 1987, the judge sentenced Rider to 50 years with a 25-year parole disqualifier on the robbery count. On the count for possessing a handgun without a permit, Rider was sentenced to four years in prison to be served concurrently.  The other two counts were dismissed for sentencing purposes.

B.   <u>Factual Background</u>

The pertinent factual background is taken from the respondents' answer and the relevant state court record provided.

2

On February 13, 1986, a Bergen County grand jury was convened to consider charges against petitioner in this case. The assistant prosecutor, who presented the case to the grand jury, listed all the witnesses expected to testify and asked the jurors if they knew any of the listed witnesses.  One juror stated that he had been a close personal friend of one witness since 1977, but insisted that he could remain impartial on the grand jury.[1]  The assistant prosecutor allowed the juror to remain on the panel to hear the testimony, but directed that the juror was to abstain from any participation, deliberations and voting.  The juror agreed to follow the prosecutor's admonitions.

Before trial, defense counsel moved to dismiss the indictment based upon the prosecutor's disqualification of the grand juror.  It was argued that allowing the juror to remain on the panel violated the requirement of grand jury secrecy during the presentation, deliberation, and voting stages of the proceedings.  In response to the motion, the State argued that the juror was qualified to sit and that the presenting prosecutor had been overcautious in his admonitions to the juror.  The State also noted that no evidence had been adduced that the juror deliberated and voted on the indictment, but he could have done so without violating the rules.

---

[1]  This discussion took place outside the presence of the other grand jurors.

3

The trial judge denied the motion, finding no prosecutorial misconduct and no evidence of prejudice from the grand juror's presence in the grand jury room.  (Respondents' Exhibit 3 at 26-27).  On appeal, the Superior Court of New Jersey, Appellate Division, found Rider's claim to be "clearly without merit." State v. Milton Rider, Docket No. A-626-87T4 (App. Div. 1989) (Rider I)(Resp. Ex. 4 at 9).  This claim was not raised by Rider's appellate counsel on his petition for certification to the Supreme Court of New Jersey.

Rider raised the claim of prosecutorial misconduct and ineffective assistance of appellate counsel in an earlier federal habeas petition filed before this Court.  The petition was dismissed without prejudice for failure to exhaust state court remedies.  Rider v. Hendrix, et al., Civil No. 98-5852 (JAG)(Resp. Ex. 32).  Accordingly, Rider attempted to file a petition for certification nunc pro tunc to the New Jersey Supreme Court, raising these claims for state court review.  The New Jersey Supreme Court denied the application by Order filed October 17, 2002.  State v. Milton Rider, Docket No. 53, 633. (Resp. Ex. 33).

Rider then filed a petition for a writ of mandamus before the United States Court of Appeals for the Third Circuit, seeking to compel this Court to "file" his federal habeas petition.  In the interim, Rider also filed this habeas petition.  On September

4

2, 2003, the Third Circuit denied mandamus relief.  In re Rider, C.A. No. 03-2354 (Resp. Ex. 34)(Docket Entry No. 9, 10).

Rider filed this habeas petition on or about March 21, 2003. He was granted leave to file an amended petition, by this Court's Order dated April 15, 2003.  Rider filed the amended petition on or about May 14, 2003.  He also wrote to the Court several times seeking a statutory exception to the exhaustion requirement under 28 U.S.C. § 2254(b).  (Docket Entry Nos. 6, 8, and 15).  Rider filed a motion on December 27, 2004, seeking interpretation and application of the "fundamental fairness exception" with respect to the issue of exhaustion.[2]  (Docket Entry No. 16).

Respondents filed their answer to the petition on June 1, 2004.

## II.   CLAIMS FOR HABEAS RELIEF

Rider asserts claims of prosecutorial misconduct and ineffective assistance of appellate counsel with respect to the grand juror disqualification issue.  In his amended petition, he also asserts "illegal actions by the state courts" with respect to the denial of the motion to dismiss the indictment.  Rider argues that the state courts' decisions are contrary to, or an

---

[2]  Because this Court has determined that claims in this petition are without merit, Rider's motion and letter applications regarding an interpretation of exhaustion issues will be denied as moot.  In addition, as discussed infra in this Opinion, the claims were denied on the merits, pursuant to 28 U.S.C. § 2254(b)(2), without regard to whether the claims had been exhausted.

unreasonable application of, clearly established Supreme Court precedent.  In particular, Rider contends that the state courts failed to apply and adhere to a New Jersey Supreme Court case, State v. Murphy, 110 N.J. 20 (1988), in which he argues that the court dismissed an indictment under circumstances similar to this matter.

In their answer, respondents assert that petitioner's claims are procedurally defaulted, and are not cognizable on federal review.  The State also contends that the ineffective assistance of appellate counsel claim is without merit.

III.  EXHAUSTION REQUIREMENT AND PROCEDURAL DEFAULT

Respondents argue that Rider's claims are procedurally defaulted because the New Jersey Supreme Court denied Rider's petition for certification as out of time, which had presented these claims for review.

A state prisoner applying for a writ of habeas corpus in federal court must first "exhaust[] the remedies available in the courts of the State," unless "there is an absence of available State corrective process[] or ... circumstances exist that render such process ineffective ... ."  28 U.S.C. § 2254(b)(1); see also 28 U.S.C. §2254(c); Rose v. Lundy, 455 U.S. 509, 510 (1982); Johnson v. Pinchak, 392 F.3d 551, 556 (3d Cir. 2004).  A petitioner exhausts state remedies by presenting his federal constitutional claims to each level of the state courts empowered

to hear those claims, either on direct appeal or in collateral post-conviction proceedings.  See, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 847 (1999) ("requiring state prisoners [in order to fully exhaust their claims] to file petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State"); Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997) (collateral attack in state court is not required if the petitioner's claim has been considered on direct appeal), cert. denied, 532 U.S. 919 (2001); 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.")  Once a petitioner's federal claims have been fairly presented to the state's highest court, the exhaustion requirement is satisfied. Castille v. Peoples, 489 U.S. 346, 350 (1989); Picard v. Connor, 404 U.S. 270, 275 (1971).

The petitioner generally bears the burden to prove all facts establishing exhaustion.  Toulson v. Beyer, 987 F.2d 984, 987 (3d Cir. 1993).  This means that the claims heard by the state courts must be the "substantial equivalent" of the claims asserted in the federal habeas petition.  Picard, 404 U.S. at 275.  Reliance on the same constitutional provision is not sufficient; the legal theory and factual basis must also be the same.  Id. at 277.

Failure to exhaust may be excused on the basis that state process is unavailable, but "state law must clearly foreclose state court review of unexhausted claims." Toulson, 987 F.2d at 987. In addition, the Court of Appeals for the Third Circuit has stated that, "if a prisoner could establish that the activities of the state authorities made the prisoner's resort to the state procedures in effect unavailable, exhaustion would be excused." Mayberry v. Petsock, 821 F.2d 179, 184 (3d Cir.), cert. denied, 484 U.S. 946 (1987).[3]

When a claim has not been fairly presented to the state courts because state procedural rules bar the prisoner from seeking further relief in state court, the exhaustion requirement is satisfied because there is "an absence of available State corrective process." 28 U.S.C. § 2254(b). See Werts v. Vaughn, 228 F.3d 178, 192-93 (3d Cir. 2000), cert. denied, 532 U.S. 980 (2001); McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999). However, when a state procedural rule has prevented the state courts from reaching the merits of a petitioner's federal claims,

---

[3] However, discovery and an evidentiary hearing should not be made available to a habeas petitioner who claims relief from the exhaustion rule "unless the petitioner sets forth facts with sufficient specificity that the district court may be able, by examination of the allegations and the response, if any, to determine if further proceedings are appropriate." Mayberry, 821 F.2d at 186. "[T]he allegations of exhaustion must be at least as specific with respect to the facts allegedly excusing exhaustion as is required for allegations alleging constitutional deprivation as the basis for the habeas petition." Id. at 187.

8

federal habeas review of those claims ordinarily is barred
because the petitioner has procedurally defaulted the claims.
Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991).  Where one state
judgment rejects a petitioner's federal claims on state
procedural grounds, "later unexplained orders upholding that
judgment or rejecting the same claims rest upon the same ground."
Id. at 803.[4]

> A procedural default occurs when a prisoner's federal
> claim is barred from consideration in the state courts
> by an "independent and adequate" state procedural rule.
> See, e.g., Doctor[ v. Walters, 96 F.3d 675, 683 (3d
> Cir. 1996)].  Federal courts may not consider the
> merits of a procedurally defaulted claim unless the
> applicant establishes "cause" to excuse the default and
> actual "prejudice" as a result of the alleged violation
> of the federal law or unless the applicant demonstrates
> that failure to consider the claim will result in a
> fundamental "miscarriage of justice."  Coleman v.
> Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 115
> L.Ed.2d 640 (1991).

Carpenter v. Vaughn, 296 F.3d 138, 146 (3d Cir. 2002).

On habeas review of state prisoner claims, a federal court
"will presume that there is no independent and adequate state
ground for a state court decision when the decision 'fairly
appears to rest primarily on federal law, or to be interwoven
with the federal law, and when the adequacy and independence of

---

[4] A petitioner's procedural default precludes federal habeas
review only if the last state court rendering a judgment in the
case rests its judgment on the procedural default.  Harris v.
Reed, 489 U.S. 255, 262 (1989).  Where a state-court decision is
ambiguous, the federal habeas court may address a federal issue
considered by the state court.  Id. at 262-63.

any possible state law ground is not clear from the face of the opinion.'" <u>Coleman</u>, 501 U.S. at 734-35 (quoting <u>Michigan v. Long</u>, 463 U.S. 1032, 1040-41 (1983)).[5]  Only a "firmly established and regularly followed state practice" is adequate to prevent subsequent habeas review in federal court.  <u>James v. Kentucky</u>, 466 U.S. 341, 348-351 (1984).  <u>See also</u> <u>Lee v. Kemna</u>, 534 U.S. 362, 376 (2002) ("Ordinarily, violation of "firmly established and regularly followed" state rules ... will be adequate to foreclose review of a federal claim." (citations omitted)).  Generally speaking, "[a] state court's refusal to address a prisoner's federal claims because he has not met a state procedural requirement is both independent and adequate." <u>Cabrera v. Barbo</u>, 175 F.3d 307, 312 (3d Cir. 1999) (citations omitted), <u>cert</u>. <u>denied</u>, 528 U.S. 886 (1999).

The "cause" standard requires a petitioner to show that some objective factor external to the defense impeded his efforts to comply with the state procedural rule.  <u>See</u> <u>Coleman</u>, 501 U.S. at 752 (citing <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986)).  In the absence of a Sixth Amendment violation, the petitioner bears the risk in federal habeas for all attorney errors made in the course of the representation.  <u>Coleman</u>, 501 U.S. at 754.  Neither a pro

---

[5] A state court's reliance on a procedural bar as an alternate holding is sufficient to trigger the "cause" and "prejudice" test.  <u>See</u> <u>United States ex rel. Caruso v. Zelinsky</u>, 689 F.2d 435, 440 (3d Cir. 1982).

se prisoner's ignorance of the procedural rule nor inadvertence satisfies the cause standard.  <u>Murray</u> at 485-87.  Failure of the state court to "bend the rules" for a pro se litigant is not cause.  <u>Caswell v. Ryan</u>, 953 F.2d 853, 862 (3d Cir. 1992), <u>cert</u>. <u>denied</u>, 504 U.S. 944 (1992).

To establish "prejudice," a petitioner must prove "'not merely that the errors at ... trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimension.'" <u>Murray v. Carrier</u>, 477 U.S. 478, 494 (1986) (quoting <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982)).

In the context of an ineffective assistance claim, the Court of Appeals for the Third Circuit has held that prejudice occurs where "there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different." <u>Sistrunk v. Vaughn</u>, 96 F.3d 666, 670 (3d Cir. 1996).

In the alternative, in order to establish that failure to review an otherwise procedurally defaulted claim will result in a "miscarriage of justice," a petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." <u>Carrier</u>, 477 U.S. at 496. "Thus, to establish a miscarriage of justice, the petitioner must

prove that it is more likely than not that no reasonable juror would have convicted him." <u>Werts</u>, 228 F.3d at 193 (citing <u>Schlup v. Delo</u>, 513 U.S. 298, 326 (1995)).

Here, the New Jersey Supreme Court declined to hear Rider's claims on a petition for certification filed out of time.  Thus, there is a clear and unambiguous determination by the highest state court that Rider's claims, as asserted here, were dismissed solely on the grounds of a procedural default or bar.

However, even if this Court determines that the claims are procedurally defaulted or unexhausted, the Court may opt to review the claims and deny them on the merits, pursuant to 28 U.S.C. § 2254(b)(2).  Section 2254(b)(2) provides that "[a]n application for writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  Here, the respondents have fully addressed each of petitioner's claims on the merits, as well as asserting affirmative defenses to some of them.  Thus, the Court will deny this petition on the merits, pursuant to 28 U.S.C. § 2254(b)(2), because "it is perfectly clear that [Rider] does not raise even a colorable federal claim." <u>Lambert</u>, 134 F.3d at 514-15.

IV.  <u>STANDARD GOVERNING REVIEW OF § 2254 CLAIMS</u>

This Court recognizes that a <u>pro</u> <u>se</u> pleading is held to less stringent standards than more formal pleadings drafted by

attorneys.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  Thus, a pro se habeas petition should be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Duarte v. Hurley, 43 F. Supp.2d 504, 507 (D.N.J. 1999).  Because Rider is a pro se litigant, the Court will accord his petition the liberal construction intended for pro se petitioners.

Under § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal courts in habeas matters must give considerable deference to determinations of the state trial and appellate courts.  See 28 U.S.C. § 2254(e); Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied, 122 S.Ct. 269 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996)(citing Parke v. Raley, 506 U.S. 20, 36 (1992)).  Section 2254(d) sets the standard for granting or denying a habeas writ:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In <u>Williams v. Taylor</u>, 529 U.S. 362 (2000), the Supreme Court explained that subsection (d)(1) involves two clauses or conditions, one of which must be satisfied before a writ may issue.  The first clause, or condition, is referred to as the "contrary to" clause.  The second condition is the "unreasonable application" clause.  <u>Williams</u>, 529 U.S. at 412-13.  In the "contrary to" clause, "a federal court may grant the writ if the state arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  <u>Id</u>.

Under the "unreasonable application" clause, a federal court may grant the writ if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of [the petitioner's] case."  <u>Id</u>. at 413.  Habeas relief may not be granted under the "unreasonable application" condition unless a state court's application of clearly established federal law was objectively unreasonable; an incorrect application of federal law alone is not sufficient to warrant habeas relief.  <u>Id</u>. at 411. <u>See also</u> <u>Werts v. Vaughn</u>, 228 F.3d at 197; <u>Matteo v. Superintendent, SCI Albion</u>, 171 F.3d 877, 891 (3d Cir. 1999), <u>cert</u>. <u>denied</u> <u>sub</u> <u>nom</u> <u>Matteo v. Brennan</u>, 528 U.S. 824 (1999).

Consonant with <u>Williams</u>, the Third Circuit has held that §
2254(d)(1) requires a federal habeas court to make a two step
inquiry of the petitioner's claims.  First, the court must
examine the claims under the "contrary to" provision, identify
the applicable Supreme Court precedent and determine whether it
resolves petitioner's claims.  <u>See</u> <u>Werts</u>, 228 F.3d at 196-97;
<u>Matteo</u>, 171 F.3d at 888-891.  If the federal court determines
that the state court's decision was not "contrary to" applicable
Supreme Court precedent, then the court takes the second step of
the analysis under § 2254(d)(1), which is whether the state court
unreasonably applied the Supreme Court precedent in reaching its
decision.  <u>Werts</u>, 228 F.3d at 197.

This second step requires more than a disagreement with the
state court's ruling because the Supreme Court would have reached
a different result.  <u>Id</u>.  AEDPA prohibits such <i>de novo</i> review.
Rather, the federal habeas court must determine whether the state
court's application of the Supreme Court precedent was
objectively unreasonable.  <u>Id</u>.  In short, the federal court must
decide whether the state court's application of federal law, when
evaluated objectively and on the merits, resulted in an outcome
that cannot reasonably be justified under existing Supreme Court
precedent.  <u>Id</u>.; <u>see also</u> <u>Jacobs v. Horn</u>, 395 F.3d 92, 100 (3d
Cir. 2005).

Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court." Id.; see also 28 U.S.C. § 2254(e)(1). The Third Circuit has ruled that this presumption of correctness based upon state court factual findings can only be overcome by clear and convincing evidence. See Duncan, 256 F.3d at 196 (citing 28 U.S.C. § 2254(e)(1)). Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

V.   ANALYSIS

A.   Prosecutorial Misconduct

Rider principally argues that the prosecutor's allowance of a disqualified grand juror to remain in the grand jury room during the presentation, deliberation and voting stages of the proceedings caused substantial prejudice in the indictment. He claims that the indictment should have been dismissed.

This claim was raised initially on direct appeal, and the Appellate Division summarily rejected it, finding that the claim was "clearly without merit." (Resp. Ex. 4 at 9).

Habeas review of a claim based on prosecutorial misconduct is limited to determining whether the conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637,

16

643 (1974).  "The touchstone of due process analysis in cases of
alleged prosecutorial misconduct is the fairness of the trial,
not the culpability of the prosecutor."  Smith v. Phillips, 455
U.S. 209, 219 (1982).  If it does not infect the entire trial,
misconduct alone is not enough to warrant a new trial.  Id. at
220.  "A criminal conviction is not to be lightly overturned on
the basis of a prosecutor's comments [or conduct] standing alone,
for the statements or conduct must be viewed in context."  United
States v. Young, 470 U.S. 1, 11 (1985).

However, the Supreme Court has recognized the obligation of
a prosecutor to conduct a criminal prosecution with propriety and
fairness.

> He may prosecute with earnestness and vigor – indeed,
> he should do so.  But, while he may strike hard blows,
> he is not at liberty to strike foul ones.  It is as
> much his duty to refrain from improper methods
> calculated to produce a wrongful conviction as it is to
> use every legitimate means to bring about a just one.
> ... Consequently, improper suggestions, insinuations,
> and, especially, assertions of personal knowledge are
> apt to carry much weight against the accused when they
> should properly carry none.

Berger v. United States, 295 U.S. 78, 88 (1935).

"Supreme Court precedent counsels that the reviewing court
must examine the prosecutor's offensive actions in context and in
light of the entire trial, assessing the severity of the conduct,
the effect of the curative instructions, and the quantum of
evidence against the defendant."  Moore v. Morton, 255 F.3d 95,
107 (3d Cir. 2001).

Here, the claim of prosecutorial misconduct centers on the grand jury proceeding.  A claim as to the validity of a state indictment, as opposed to the fairness of a trial, does not typically rise to the level of a constitutional deprivation because any such claims alleging error in a state grand jury proceeding are rendered harmless by the subsequent guilty verdict by a petit jury.  See Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989).  See also United States v. Mechanik, 475 U.S. 66, 72-73 (1986); United States v. Eniqwe, 17 F. Supp.2d 390, 393 (E.D. Pa. 1998), aff'd, 248 F.3d 1131 (3d Cir. 2000), cert. denied, 531 U.S. 1185 (2001).  Therefore, the petit jury's eventual conviction of Rider renders harmless Rider's claim that the indictment was wrongly issued based on the continued presence of a disqualified grand juror during the entire proceedings.

Further, in United States v. Bank of Nova Scotia, 487 U.S. 250, 256 (1988), the Supreme Court held that violations of Rule 6 of the Rules of Criminal Procedure are subject to harmless error analysis.  Thus, when a court is asked to dismiss an indictment based on procedural or technical grounds in the grand jury proceeding, dismissal is warranted only if it is shown that the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of the alleged procedural or technical violation.  Id.  The Court held that the district

court "had no authority to dismiss the indictment on the basis of prosecutorial misconduct absent a finding that petitioners were prejudiced by such conduct." Id. at 263.

Here, the state trial court found no evidence of prejudice or substantial influence by the disqualified grand juror to suggest that the decision to indict was unduly tainted. Accordingly, the prosecutor's decision to leave the juror in the grand jury room, but subject to restrictions from participation in the deliberations and voting, was a harmless technical or procedural violation.

Moreover, Rider's claim is based wholly on an issue of state procedural law, as set forth in State v. Murphy, 110 N.J. 20 (1988). In Murphy, the New Jersey Supreme Court ruled that when the bias of a grand juror is at issue, the County Assignment Judge supervising the grand jury must decide whether the grand juror may remain or be removed from the panel.

Generally, matters of state procedural law are not reviewable in a federal habeas petition. The Supreme Court has stated that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). This is generally true even where the state court incorrectly applied state law. Id. at 71. Rather, a federal habeas claim will lie only where a

state court determination violated some federally protected

right.  Id. at 68.  The Third Circuit likewise stated:

> Our review of a federal habeas corpus petition is limited to
> remedying deprivations of a petitioner's federal
> constitutional rights.  We can take no cognizance of non-
> constitutional harm to the defendant flowing from a state's
> violation of its own procedural rule, even if that rule is
> intended as a guide to implement a federal constitutional
> guarantee.

Wells v. Petsock, 941 F.2d 253, 256 (3d Cir. 1991), cert. denied,

505 U.S. 1223 (1992); see also Smith v. Zimmerman, 768 F.2d 69,

73 (3d Cir. 1985)("a 'mere error of state law' is not a denial of

due process").

     Here, Rider was not denied due process or other federally

protected right.  There was no showing of substantial influence

or prejudicial impact on the grand jury indictment by the

disqualified juror remaining on the panel, because he was

restricted from deliberations and voting during the proceedings.

Further, the New Jersey Appellate Division found this claim to be

without merit.  There is nothing to suggest that the decision of

the Appellate Division was contrary to, and or involved an

unreasonable application of, clearly established federal law.

     Therefore, Rider has failed to establish any due process

violation or other violation of a federally protected right that

would entitle him to federal habeas relief.  This claim for

habeas relief shall be denied for lack of merit.

B.   Ineffective Assistance of Appellate Counsel

Next, Rider asserts that his appellate counsel was ineffective for failing to raise a claim for dismissal of the indictment due to prosecutorial misconduct on his petition for certification to the New Jersey Supreme Court.

The "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), is the standard for ineffective assistance of counsel as enunciated in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, a petitioner seeking to prove a Sixth Amendment violation must demonstrate that his counsel's performance fell below an objective standard of reasonableness, assessing the facts of the case at the time of counsel's conduct. Id. at 688-89; Jacobs v. Horn, 395 F.3d 92, 102(3d Cir. 2005); Keller v. Larkins, 251 F.3d 408, 418 (3d Cir.), cert. denied, 534 U.S. 973 (2001). Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 688. "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." Id. The Supreme Court further explained:

> Judicial scrutiny of counsel's performance must be
> highly deferential. It is all too tempting for a
> defendant to second-guess counsel's assistance after
> conviction or adverse sentence, and it is all too easy
> for a court, examining counsel's defense after it has
> proved unsuccessful, to conclude that a particular act
> or omission of counsel was unreasonable. A fair
> assessment of attorney performance requires that every

> effort be made to eliminate the distorting effects of
> hindsight, to reconstruct the circumstances of
> counsel's challenged conduct, and to evaluate the
> conduct from counsel's perspective at the time.
> Because of the difficulties inherent in making the
> evaluation, a court must indulge a strong presumption
> that counsel's conduct falls within the wide range of
> reasonable professional assistance; that is, the
> defendant must overcome the presumption that, under the
> circumstances, the challenged action "might be
> considered sound trial strategy."

Id. at 689 (citations omitted); see also Virgin Islands v.
Wheatherwax, 77 F.3d 1425, 1431 (3d Cir.), cert. denied, 519 U.S.
1020 (1996).

If able to demonstrate deficient performance by counsel,
Rider must also show that counsel's substandard performance
actually prejudiced his defense.  Strickland, 466 U.S. at 687.
Prejudice is shown if "there is a reasonable probability that,
but for counsel's unprofessional errors, the result of the
proceeding would have been different.  A reasonable probability
is a probability sufficient to undermine confidence in the
outcome."  Id. at 694.  The reviewing court must evaluate the
effect of any errors in light of the totality of the evidence.
Id. at 695-96.  Thus, the petitioner must establish both
deficient performance and resulting prejudice in order to state
an ineffective assistance of counsel claim.  Id. at 697.  See
also Jacobs, 395 F.3d at 102; Keller, 251 F.3d at 418.

Further, counsel's failure to file motions, defenses, or claims does not per se constitute ineffective assistance of counsel.  See Kimmelman v. Morrison, 477 U.S. 365, 383-84 (1986); Jelinek v. Costello, 247 F. Supp.2d 212 (E.D.N.Y. 2003).  Rather, a determination of ineffectiveness depends on whether the motion or objection would have been granted or sustained had it been made.  United States v. Oakley, 827 F.2d 1023, 1025 (5th Cir. 1987).

Claims of ineffective assistance of appellate counsel are also evaluated under the Strickland standard.  See Wright v. Vaughn, 2004 WL 1687865, *6, n.10 (E.D. Pa. July 26, 2004).  In order to prevail on a claim that appellate counsel was ineffective, Rider must show that (1) counsel's performance fell below an objective standard of reasonableness, and (2) there was a reasonable probability, but for counsel's deficiency in raising the arguments on appeal, that the conviction would have been reversed on appeal.  See Buehl v. Vaughn, 166 F.3d 163, 173-74 (3d Cir. 1999), cert. dismissed, 527 U.S. 1050 (1999).

There is no dispute in this Circuit that matters of appellate strategy lie within the discretion of appellate counsel.  See Caruso v. Zelinsky, 515 F. Supp. 676, 685 (D.N.J. 1981), aff'd in part, vacated and remanded in part sub nom., United States ex rel. Caruso v. Zelinsky, 689 F.2d 435 (3d Cir. 1982).  Appellate counsel is not required to raise every

colorable claim of error on appeal, even if the defendant suggests it.  <u>See</u> <u>Jones v. Barnes</u>, 463 U.S. 745, 754 (1983); <u>United States v. Hart</u>, 933 F.2d 80, 83 (1st Cir. 1991).

While it may be arguable that Rider's appellate counsel should have presented the issue in the petition for certification, since it was raised and decided on direct appeal before the Appellate Division, Rider cannot show that he was prejudiced by the alleged deficiency.  The state court denied the motion for dismissal of the indictment because there was no evidence that the prosecutor's alleged procedural violation in keeping the disqualified grand juror on the panel substantially influenced or prejudiced the decision to indict.  The state appellate court likewise found the claim of prosecutorial misconduct with respect to the grand jury proceeding to be without merit.  Thus, Rider has failed to satisfy the second prong in his ineffective assistance of appellate counsel claim. There was no reasonable probability, had appellate counsel raised the suggested claim, that the conviction would have been reversed on appeal.

Accordingly, this Court cannot conclude that determination of this issue resulted in a decision that was contrary to, or involved an unreasonable application or determination of law or fact.  <u>Williams v. Taylor</u>, <u>supra</u>.  Rider's claim of ineffective

assistance of appellate counsel shall be denied for lack of
merit.

C.   "Illegal Actions by the State Courts"

     In his amended petition, Rider asserts that the state courts
wrongfully denied the motion to dismiss the indictment based on
their failure to apply State v. Murphy, 110 N.J. 20 (1988).  He
claims that the state courts' determination was contrary to, or
involved an unreasonable application of clearly established
Supreme Court case law.

     As discussed in Section IV.A above, State v. Murphy involved
an issue of state procedural law.  The Supreme Court of the
United States has stated that "it is not the province of a
federal habeas court to reexamine state-court determinations on
state-law questions."  Estelle v. McGuire, 502 U.S. 62, 67-68
(1991).  This is generally true even where the state court
incorrectly applied state law.  Id. at 71.  Accordingly, this
Court shall dismiss this claim for failure to state a cognizable
federal claim for habeas relief.[6]

--------

     [6]  In Murphy, the court also found that the continued
presence of the possibly biased grand juror did not
"substantially undermine" the objectivity of the charging process
or cause harm to the defendant, as would warrant dismissal of the
indictment.  Moreover, the court observed that the conduct of the
deputy attorneys general in failing to follow the correct
procedure and advise the assignment judge of the possible biased
juror, while poor judgment, did not amount to an intentional
subversion of the grand jury process so as to warrant reversal of
the conviction.  Id., 110 N.J. at 34-36.  In this regard, there
is no basis to Rider's claim that the state court failed to apply

## V.   CERTIFICATE OF APPEALABILITY

This Court next must determine whether a certificate of appealability should issue.   See Third Circuit Local Appellate Rule 22.2.   The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   For the reasons discussed above, this Court's review of the claims advanced by Rider demonstrates that he has failed to make a substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue.   Thus, this Court declines to issue a certificate of appealability, pursuant to 28 U.S.C. § 2253(c)(2).

### CONCLUSION

For the foregoing reasons, this Court finds that Rider's § 2254 habeas petition should be denied on the merits.   A certificate of appealability will not issue.   Rider's applications and motion for an "interpretation and application of fundamental fairness" on the issue of exhaustion (Docket Entry Nos. 6, 8, 15 and 16) will be denied as moot.

                        S/Joseph A. Greenaway, Jr.
                        JOSEPH A. GREENAWAY, JR., U.S.D.J.

DATED: October 3, 2005

---

the rule of law in Murphy.  The trial judge found no evidence of prejudice in the proceedings, or intentional misconduct by the assistant prosecutor, as did the court in Murphy.

26